## Commonwealth *v.* Grear, Appellant.

Argued October 5, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*I. Finkelstein,* with him *M. Phillip Freed,* for appellant.

*Americo V. Cortese,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY DITHRICH, J., November 14, 1950:

Appellant served as minority inspector in the 27th division of the 20th ward of Philadelphia at the primary election held April 27, 1948. She and Wilbur Jackson, the majority inspector, were convicted of unlawfully, willfully and fraudulently making a false return of the votes cast at said election; of unlawfully signing, as inspectors, the certificate of the votes cast, knowing it to be false; and unlawfully inserting and permitting to be inserted the names of persons on the voters' certificates as having voted in said election district and as having signed the voters' certificates, whereas the said persons had not voted and had not signed the certificates. Demurrers to two other indictments, charging conspiracy to violate the provisions of the Election Code and fraudulently registering votes on the voting machines, were sustained.

After the verdict of guilty as to both defendants had been recorded, counsel for Jackson, the majority inspector, stated in open court, "We feel we have had a fair trial and we have no motions whatever to make." The minority inspector, however, filed a motion for a new trial and after argument before a court in banc it was refused. From the refusal of her motion she has brought this appeal.

We will not unduly lengthen this opinion by recounting in detail the evidence of violation of the Election Code and perpetration of fraud in the conduct of the election. Suffice it that we agree with the learned court below that the Commonwealth's evidence, given during a trial which lasted four days, was "overwhelming." For example, appellant admitted that she signed the certificate of the votes cast on the return sheet, knowing it to be false, and that she knew that the majority inspector had signed a number of the voters' certificates required by the Code to be signed by the voter. As minority inspector she was in charge of the

district register. Subsection (a) of §1210, Art. XII, of the Election Code of 1937, June 3, P. L. 1333, 25 PS §3050, provides in part that: "At every primary and election each elector who desires to vote shall first sign a voter's certificate, and [with certain exceptions] . . . insert his address therein, and hand the same to the election officer in charge of the district register. Such election officer shall thereupon compare the elector's signature on his voter's certificate with his signature in the district register. If, upon such comparison, the signature upon the voter's certificate appears to be genuine, the elector who has signed the certificate shall, if otherwise qualified, be permitted to vote: . . . As each voter is found to be qualified and votes, the election officer in charge of the district register shall write or stamp the date of the election or primary, the number of the stub of the ballot issued to him or his number in the order of admission to the voting machines, and at primaries a letter or abbreviation designating the party in whose primary he votes, and shall sign his name or initials in the proper space on the registration card of such voter contained in the district register."

Before entering upon the performance of their duties, the two inspectors took the oath required by the Election Code, which is in part as follows: "I . . . do swear that I will as an inspector duly attend the ensuing primary during the continuance thereof, and that I will not admit any person to vote, except such as I shall firmly believe to be registered and entitled to vote at such primary, according to the provisions of the Constitution and laws of this Commonwealth, . . . that I will make a true and perfect return of the said primary, and that I will in all things truly, impartially and faithfully perform my duties therein, to the best of my judgment and ability; . . ."

The evidence is clear that appellant violated the oath taken by her as minority inspector in that she did

admit certain persons to vote who, she had every reason to believe, were not entitled to vote at such primary, and that she joined in making a false return of the votes cast. Willful fraud in the conduct of his duties by an election officer, willful neglect or refusal to perform his duties, and violation of any of the provisions of the Code are misdemeanors punishable as provided in the Code by §§1825, 1848 and 1850, Art. XVIII.

There could be no reasonable doubt that appellant understood her duties and her rights as an election officer. She was a high school graduate; she had been a watcher at the municipal election in 1947 when she was elected minority inspector; and in the primary election, at which she served as minority inspector, she was a candidate for the position of divisional committeewoman in the Democratic Party. Before entering upon her duties she had attended a school conducted by the county elections board and received instructions as to her duties, and she knew that she could bring to the attention of the Court of Common Pleas, which was in session for the purpose, any violation of the election law by any member of the board. In fact, she had appealed to the court from the refusal of the judge of elections to permit her to serve as an election officer because she was a candidate for a party office. It was not until ordered by the court that the judge of elections permitted her to serve. There is no evidence that any fraudulent votes had been cast before she took her place on the election board. She and the majority inspector sat side by side at the same table in the polling place.

As part of the Commonwealth's case, there were admitted in evidence 34 registration affidavits taken from the district register, which was in the charge of Miss Grear. These bore the signatures of the registered voters. There were then admitted in evidence the 34 voters' certificates purporting to be signed by the same persons

who signed the aforesaid registration affidavits. Upon a comparison of the signatures the jury found that they were not the same. A,s stated by the court below, "The dissimilarity in handwriting and sometimes in spelling is glaring." It was the duty of appellant to compare and determine whether the signatures on the voters' certificates were the same as those in the district register. A glaring illustration of her failure to perform her duty is the evidence in regard to one Sam Smith. A voter's certificate, signed with the name Smith, and his registration affidavit, on the back of which it was noted that he voted at the primary held April 27, 1948, and initialed "L. G.", were admitted in evidence. The evidence further discloses that Sam Smith was in the county prison from February 19, 1948, to May 6, 1948. His record card bearing his signature, his prison description card and his parole petition bearing his signature were all in evidence at the trial. A comparison of the genuine signatures with the signature on the voter's certificate clearly established that the latter was false.

Testifying in her own defense, appellant admitted that she knew that "Wilbur Jackson had signed a lot of voters' certificates," and that she "knew then that the vote as called from the machines was not true." Her only explanation for her failure to refuse to sign the return was that a policeman threatened her with arrest unless she would do so. No policeman was called as a witness, nor was she able to identify any policeman as being present in the polling place. When asked why, if she was so threatened, she had not reported the matter to the Court of Common Pleas, she said that she was afraid to leave the polling place. The evidence clearly shows that there was nothing to prevent her leaving, or at least having the matter reported for her by one of her party watchers. Appellant could have called as a witness the woman who acted as her clerk,

but she did not call her or any other person or persons to testify in her behalf, except character witnesses.

We are convinced, as was the court below, that the defendant-appellant, Lillie Belle Grear, "received a fair and impartial trial," and that her motion for a new trial was properly refused. We find practically no merit in any of the 41 reasons filed in support thereof and none in the statement of questions involved.

The judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as she may be there called, and that she be by that court committed until she has complied with her sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.